OSWALD R. JONES et al., Appellants-Respondents, et al., Plaintiffs, *v.* CHAPEL HILL, INC., Respondent-Appellant.

First Department, March 29, 1948.

*Raymond E. Burdick* of counsel (*Lewis M. Isaacs, Jr.*, with him on the brief; *M. S. & I. S. Isaacs*, attorneys), for appellants-repondents.

*Louis Susman* of counsel (*George Goodstein* with him on the brief, attorney), for respondent-appellant.

VAN VOORHIS, J. Plaintiffs appeal from the judgment insofar as it dismisses the first, second and third causes of action set forth in the amended complaint. These causes of action are (1) to enjoin the defendant Chapel Hill, Inc., from maintaining an undertaking establishment on the northwest corner of 71st

Street and Lexington Avenue in the Borough of Manhattan, City of New York, (2) to enjoin the erection of a new building at said location for conducting such a business on an enlarged scale, and (3) to enjoin the use of the said new structure as in violation of a negative covenant, applicable to part of the land, forbidding any " noxious or dangerous trade or business " on the premises.

Defendant Chapel Hill, Inc., appeals from so much of the judgment as sustains plaintiffs' fourth cause of action, restraining defendant from erecting the proposed new structure within ten feet of the property line on the north side of 71st Street, by reason of a setback restriction contained in the deeds which is enforcible by some of the plaintiffs on said street.

We are of opinion that the trial court correctly dismissed the first cause of action and permitted the present undertaking establishment to continue, and correctly held that a new building would be required to conform to the ten-foot setback restriction on the north side of 71st Street. We think that the trial court was in error, however, in declining to issue an injunction restraining as a private nuisance the erection of the proposed new enlarged structure, having a capacity, as the trial court has found, of upwards of fifty funerals a day.

A statement of further facts is necessary. In April and May, 1944, the defendant, a domestic corporation organized in that year, became the owner of premises known as Nos. 137, 139 and 141 East 71st Street and 986 Lexington Avenue. These properties are contiguous, and front 54 feet on the north side of East 71st Street and 122 feet on the west side of Lexington Avenue. The Lexington Avenue frontage covers about 65% of the distance from 71st to 72nd Street.

The properties so purchased by defendant consist of five-story buildings, built about seventy-five years ago for residential use. For some time past, the northwest corner of 71st Street and Lexington Avenue and the Lexington Avenue frontage, has been used for neighborhood stores on the ground floor level only. The rest of the buildings, as well as 71st and 72nd Streets on both sides of Lexington Avenue, have been devoted for many years to residential purposes. Lexington Avenue is zoned for commercial uses for a distance of 100 feet in depth on both sides of the street. The cross streets, beyond the 100-foot point, are zoned as residential. The actual use of Lexington Avenue for commercial purposes in this vicinity is mostly for neighborhood stores.

In January, 1945, defendant commenced using the corner property at 141 East 71st Street in the undertaking business. The various plaintiffs promptly notified defendant that they objected. Defendant continued to use this corner for a small undertaking business, in spite of these protests, and made minor alterations in the building for adaptation to that object.

Subsequently, defendant filed plans with the City Department of Housing and Buildings for the construction on the combined area of a large undertaking plant, to be three stories and a penthouse in height. The plans call for a funeral chapel two stories high, plus an organ loft, with a seating capacity of 224 persons, and with double doors opening on 71st Street; there are to be ten separate reposing rooms, each designed to accommodate a body and mourners, in each of which a separate funeral service can be held. There will be five separate offices, rooms for the embalming, storage and preparation of dead bodies for burial, space for the display and storage of caskets and funeral merchandise, and many other rooms for the conduct of said business. Use of the new building, or portions of it, is also to be let to other undertakers.

The trial court has found these facts, and, as has been stated, that there will be a maximum capacity of upwards of fifty funerals a day, with the largest number on Sunday, and that in order to meet carrying charges and operating expenses there must be an average of not less than three funerals on every day in the year.

It was further found that said premises, prior to their acquisition by the defendant in 1944, had never been used for an undertaking business.

The Court of Appeals has held that the circumstance that a mortuary establishment is permitted by the zoning ordinance, does not bar an action for an injunction on the ground that it would constitute a private nuisance (*Sweet* v. *Campbell*, 282 N. Y. 146). The Court of Appeals in that case reversed a summary judgment dismissing a complaint, holding that there was a triable issue concerning whether the proposed use would constitute a private nuisance, in determining which the location and surroundings might be taken into account.

The case of *Rowland* v. *Miller* (139 N. Y. 93) is an outstanding authority, holding that the conducting of an undertaking establishment in a residential neighborhood is in violation of a covenant against carrying on a trade or business "injurious or offensive to the neighboring inhabitants."

The Court of Appeals held that the conduct of an undertaking establishment was by nature offensive to the neighboring inhabitants. It is true that in that case autopsies were to be conducted on the premises, but the judgment, which was affirmed, not only enjoined that use but also "the use of said premises for the business of having funerals therefrom". The decision did not rest alone upon the utilization of the premises for autopsies. The Court of Appeals stated (pp. 102–103):

"It cannot be doubted that the business of the Taylor Company was, within this definition, offensive to the neighboring residents. People of ordinary sensibilities would not willingly live next to a lot upon which such a business is carried on. An ordinary person desiring to rent such a house as plaintiff's would not take her house if he could get one just like it at the same rent at some other suitable and convenient place. Indeed, her house would be shunned by people generally who could afford to live in such an expensive house.

"The courts can take judicial notice of the offensive character of such a business. Judges must be supposed to be acquainted with the ordinary sentiments, feelings, and sensibilities of the people among whom they live, and hence in this case the learned judge, after the character of the business carried on by the Taylor Company had been proved, could have found, as matter of law, that it was in violation of the restriction agreement, without any further proof. It was, therefore, unnecessary for the plaintiff upon the trial to call witnesses from the neighborhood to give their opinions that this business was injurious and offensive. Even if such opinions were erroneously received, they were unnecessary and harmless, as upon the undisputed evidence as to the character of the business carried on the legal conclusion of the trial judge must have been the same."

The business as proposed to be conducted in this large and elaborate building will certainly be a source of injury, both to the sensibilities of ordinary persons residing in the neighborhood, and to the real estate values of the properties on both 71st and 72nd Streets.

It is evident that the defendant has sought to derive an advantage by locating its undertaking business practically in a residential section of the city. The worth of the strictly residential property located close at hand will be greatly diminished if defendant's project is accomplished. The business, as the Court of Appeals has stated in *Rowland* v. *Miller* (*supra*), would be offensive if close to any residential neighborhood. Defendant

is in a particularly inequitable position in that it proposes to take advantage of this environment, whose character at the same time it proposes to destroy.

Justice EDMUND H. LEWIS, now Associate Judge of the Court of Appeals, had occasion to consider this question in *Arthur* v. *Virkler* (144 Misc. 483). He held, at the Lewis County Equity Term, after a careful examination of the subject, and on ample citation of authorities from other States upon the question, that it constituted a nuisance to conduct an undertaking business in a residential area. No zoning ordinance was involved.

In *Heimerle* v. *Village of Bronxville* (168 Misc. 783, affd. 256 App. Div. 993) the reasonableness of a zoning ordinance was upheld which prohibited an undertaking establishment in a business or commercial zone within 200 feet of a residential area. The court said, quoting from other authorities (p. 793) '' ' * * * we take judicial notice that the introduction of such a business into a residential neighborhood, where none has previously been established, will inevitably depreciate the value of the property as well as discommode the owners.' ''

In *Bond* v. *Cooke* (237 App. Div. 229, 232) the court stated that it was common knowledge that an undertaking parlor renders '' near-by residence less desirable.''

We do not rule that the present small undertaking rooms are a nuisance, but on all of the facts and circumstances disclosed in this record the proposed structure, which defendant's treasurer estimates will cost $450,000 with a total proposed investment of $550,000, would constitute a private nuisance in the location in question, regardless of how efficiently it might be operated. These people did not come to the nuisance; the nuisance is coming to them. It would be offensive to the ordinary sensibilities of human beings, and would depreciate to a large degree the real estate values for residential purposes throughout the vicinity. Such being the case, it is unnecessary to rule upon whether the business would be in violation of the restrictive covenant applicable to 986 Lexington Avenue.

The judgment appealed from should be modified by granting to all the plaintiffs-appellants-respondents the relief applied for under the second cause of action enjoining the proposed new structure. As so modified, the judgment should be affirmed, except that the third cause of action, relating to the restrictive covenant, should be dismissed as academic but not upon the merits. Costs and disbursements should be allowed to the plaintiffs-appellants.

DORE, J. P., COHN, CALLAHAN and SHIENTAG, JJ., concur.

Judgment unanimously modified by granting to all the plaintiffs-appellants-respondents the relief applied for under the second cause of action enjoining the proposed new structure. As so modified the judgment is affirmed, with costs to the plaintiffs-appellants, except that the third cause of action, relating to the restrictive covenant, is dismissed as academic but not upon the merits. Settle order on notice.