OPINION OF THE COURT
John W. Grow, J.
The issue presented in this CPLR article 78 proceeding is whether the operation of a funeral home in a R-2 residential zone in the Village of Waterville (Village) constitutes a customary home occupation within the meaning of the Village’s zoning ordinance (ordinance).
BACKGROUND
Respondent Thomas Pavlot (Pavlot) purchased a single-family dwelling in the Village’s R-2 zone and then applied to the Zoning Board of Appeals (ZBA) seeking an interpretation that the zone permits the operation of his funeral business as a customary home occupation. Interpretation of the ordinance’s provisions is a function of the ZBA.
Upon receiving a favorable interpretation Pavlot was issued a permit to operate the business. Subsequently, this proceeding was commenced by petitioners, neighbors in the R-2 zone.
The applicable ordinance sections are:
"SECTION II — DEFINITIONS—HOME OCCUPATION:
"An occupation or a professing [sic] which:
"a. is customarily carried on in a dwelling unit or in a building structure accessory to a dwelling unit, and
"b. is carried on by a member of the family residing in the dwelling unit, and
"c. is clearly incidental and secondary to the use of the dwelling unit for residential purposes, and
"d. which conforms to the following additional conditions:
"1. The occupation or profession shall be carried on wholly within the principal building or within a building or other structure accessory thereto.
"2. Not more than one person outside the family shall be employed in the Home Occupation.
"3. There shall be no exterior display, no exterior sign (except as permitted under Section VI [a8]), no exterior storage of materials and no other exterior indication of Home Occupation or variation from the residential character of the principal building.
"4. No offensive noise, vibration, smoke, dust, odors, heat or glare shall be produced.
*114 "In particular, a Home Occupation includes but is not limited to the following:
"Art Studio.
"Barber shops and beauty parlors within a dwelling occupied by the same (Amendment 7/2/62).
"Professional office of a physician, dentist, lawyer, engineer, architect, or accountant, within the dwelling occupied by the same.
"Teaching, with musical instruction limited to a single pupil at a time.
"Bed and Breakfast Home (Added 08/17/92).
"However, a Home Occupation shall not be interpreted to include the following:
"Commercial stables and kennels.
"Restaurants.”
Section XI establishes the ZBA and empowers that body to interpret the provisions of the ordinance.
Petitioners contend the ZBA’s action was arbitrary and capricious and an abuse of the Board’s discretion; they seek an annulment of the Board’s actions. They submit undertaking establishments are specifically authorized in the area designated "business district” and that by implication such a business is not allowed in a residential zone. They also contend such an operation is not "clearly incidental and secondary to the use of the dwelling unit for residential purposes” and that a funeral business, by its very nature, will exhibit exterior indications with mourners, bearers, and a hearse to transport the deceased, all in nonconformity with the definition of a home occupation.
The ZBA contends its interpretation is within its vested authority and that based upon Mr. Pavlot’s testimony that he will "comply with all the conditions of a home occupation” it properly determined his funeral business qualifies as a customary home occupation. The ZBA, while acknowledging that undertaking establishments are specifically authorized in a B-l Business District, submits that nothing prohibits such a business as a home occupation. Further, if the Village Legislature had so desired, it could have specifically prohibited this occupation from the residence district. The Board also submits that any external evidence of the operation is a matter for code enforcement, a subject separate and apart from the Board’s power to define a home occupation.
Research reveals a dearth of case law on the subject of a funeral home as a customary home occupation. Two New York *115 cases, however, are instructive. In Bond v Cooke (237 App Div 229), plaintiff sought to establish his funeral business in a residentially zoned area of Albany. The Albany ordinance required residential uses with the only exception being when such use was coupled with that of an office or studio of a physician, surgeon, dentist, lawyer, dressmaker, artist, or musician. In denying the request the Court, inter alia, stated "it is a matter of common knowledge that the undertaker’s establishment has to do with dead bodies, a morgue, the temporary storage of the dead * * * the going and coming of funeral wagons and hearses, the presence of sorrowing relatives, friends and mourners, the holding of funerals, and the solemn obsequies and somber trappings commonly identified therewith. When constantly forced upon the attention of neighbors * * * it is not unreasonable to conclude that these have a depressing influence on normal people and tend to make them uncomfortable, as well as to render near-by residence less desirable.” (Bond v Cooke, 237 App Div 229, 232.)
In Jones v Chapel Hill (273 App Div 510), the undertaker, who conducted his business in a residential area of New York City, purchased contiguous properties and sought to demolish them for the purpose of expanding his business. The Court denied the proposal, holding that to allow same would constitute a private nuisance regardless of the efficiency of the operation.
Turning to the authority vested in the ZBA, the Board is entrusted with a reasonable measure of discretion in the interpretation of its own ordinances. The judicial function in reviewing a board’s decision is a limited one and should not be cast aside unless there is a showing of arbitrariness or an abuse of discretion. (Matter of Fuhst v Foley, 45 NY2d 441, 445; Matter of Bockis v Kayser, 112 AD2d 222.) "Under a zoning ordinance which authorizes interpretation of its requirements by the board of appeals, specific application of a term of the ordinance to a particular property is * * * governed by the board’s interpretation, unless unreasonable or irrational”. (Matter of Frishman v Schmidt, 61 NY2d 823, 825.)
Even though the law provides the Board with broad discretion, the court concludes that in the instant matter the ZBA’s interpretation must be set aside as arbitrary and capricious in that it does not comport with the ordinance’s intent for a customary home occupation. The common thread in defining home occupation is that the occupation "is clearly incidental and secondary to the use of the dwelling unit for residéntiál purposes” *116 (emphasis added). The court finds as a matter of law that the operation of a funeral home cannot be secondary to the use as a residence because there would, by necessity, be external indications of the occupation which the ordinance specifically prohibits. (Bond v Cooke, 237 App Div 229, supra; Jones v Chapel Hill, 273 App Div 510, supra.)*' Thus, the ZBA’s contention that external indications of the occupation are matters for enforcement, rather than interpretation, is misplaced. In this case, to accept the Board’s interpretation is to vitiate the ordinance’s intent of a home occupation.
The interpretive decision of the ZBA is reversed, annulled, and set aside.

 Courts have also denied the operation of a funeral home in a residential district when the ordinance permits, in conjunction with the residence, professional offices, holding the operation was not the conduct of a profession but that of a business, or alternatively, as a nuisance. (See, 92 ALR3d 328 [and cases cited therein].)